UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DON CONRAD,

        Plaintiff,

v.                                                          Case No. 05-C-0710

CITY OF GREEN BAY,

        Defendant.

**DECISION AND ORDER**

        The City of Green Bay enacted a zoning ordinance that strictly regulates the location of sexually-oriented "adult entertainment" establishments. Plaintiff Don Conrad, who seeks to relocate the adult bookstore he has operated in the City for fifteen years, brought this action under 42 U.S.C. § 1983, challenging the ordinance as facially unconstitutional and seeking damages, and declaratory and injunctive relief. The case is presently before the court on plaintiff's motion for a preliminary injunction, which seeks to enjoin enforcement of the ordinance so that he can reopen his store at 1818 Irwin Avenue in Green Bay. The City of Green Bay opposes the motion. For the following reasons, plaintiff's motion will be denied.

**BACKGROUND**

        For fifteen years, plaintiff has operated a licensed adult bookstore known as Paradise Books and Video at 1122 Main Street in Green Bay. Plaintiff agreed to cease operating his establishment at the Main Street location on or before June 30, 2005, as part of an agreement he entered with the

City to settle a public nuisance action the City commenced against his business on June 8, 2001. (Aff. of Kevin P. Reak, Ex. A.) Plaintiff began looking for an alternative location for his bookstore in 2003. Despite the assistance of a local attorney, six real estate agents, and a city planner, plaintiff was unable to find an available property that conformed with the city's zoning requirements. (Pl.'s PFOF ¶¶ 3-4.) On June 17, 2005, plaintiff executed an offer to purchase property located at 1818 Irwin Avenue, even though it does not conform to the zoning requirements for adult entertainment establishments. Plaintiff's offer is contingent upon his being permitted to operate his adult bookstore on the property. (Pl.'s PFOF ¶¶ 7-8.) Plaintiff has been unable to locate any other property on which to operate his bookstore, and the bookstore is currently closed.[1]

The challenged ordinance permits operation of adult bookstores only in areas zoned Neighborhood Business, Community Center Business, First Business, Highway Business, Second Business, and Industrial A, and even then only as a conditional use. §13.56(3). It provides that a conditional use permit may be granted only if the adult establishment is located at least 1500 feet from any other adult establishment and 1000 feet from any land zoned residential, any official historic site, any school or daycare center, any place of worship, and any public park or parkway. §13.56(3)(a). The property at 1818 Irwin Avenue is zoned First Business; however, it is located within 1000 feet of a place of worship, and may be located within 1000 feet of land zoned residential as well. (Pl.'s PFOF ¶ 9-10.) Plaintiff has not, to date, applied for a conditional use permit.

---

[1] For purposes of the present motion, plaintiff does not argue that his inability to locate any other property on which to operate his bookstore makes application of the zoning ordinances invalid per se. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986) ("That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.").

2

A request for a conditional use permit must be filed with the City Clerk on the designated form, and it must be accompanied by plans, data, and/or supporting statements to show the proposed conditional use will conform to the standards set forth in §13.61(6). § 13.61(2). The request for a conditional use permit goes from the City Clerk to the Council, and it is then forwarded to the Plan Commission with a request for its review. §13.61(3). After reviewing the request, the Plan Commission must submit written recommendations to the City Council. *Id*. If a request for conditional use permit is not acted upon finally by the Council within 90 days of the date upon which such request is received by the Council, or 60 days from the date upon which the Plan Commission report is received by the Council, it is deemed to have been denied. §13.61(4)(a).

Pursuant to §13.61(5)(d), conditional use permit approval shall be recommended by the Plan Commission if the Commission determines that: the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, or general welfare; the establishment of the conditional use "will not impede the normal and orderly development and improvement of the surrounding property" for uses permitted in the district; the establishment of the conditional use, its exterior architectural design and functional plan will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted; adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided; adequate measures have been or will be taken to provide ingress and egress to minimize traffic congestion; the conditional use has adequate parking; and the conditional use, in all other respects, conforms to the applicable regulations of the district in which it is located. In making such determination, the Plan Commission is required to give reasonable consideration to the character of the district, its suitability for particular uses, conservation of buildings and

3

improvements, and the most appropriate use of land. §13.61(5). Prior to granting any conditional use permit, the Plan Commission may recommend conditions and restrictions upon the establishment, location, maintenance, and operation of the conditional use as is deemed necessary for compliance with the concerns specified in the Code. §13.61(6).

## DISCUSSION

The First Amendment states "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. Though originally intended to limit only Congress' power, the Supreme Court held in *Gitlow v. New York*, 268 U.S. 652, 666 (1925), that freedom of speech is "among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." As a result, state and local governments are bound by the limitations contained therein, as construed by the Supreme Court. The Supreme Court has also held that bookstores that sell pornographic material that does not meet the definition of obscene adopted in *Miller v. California*, 413 U.S. 15 (1973), are engaged in expressive activity protected by the First Amendment, as long as the material sold does not depict actual live children. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002); *Smith v. California*, 361 U.S. 147, 150 (1959). Here, there is no claim either that the material plaintiff wishes to sell meets the legal definition of obscene or that it depicts real children. Thus, it is clear plaintiff has stated a substantial federal claim. The specific question before me, however, is whether he is entitled to the preliminary relief he seeks.

To obtain a preliminary injunction, plaintiff must show (1) a reasonable likelihood of success on the merits; (2) that he has no adequate remedy at law; (3) that he will suffer irreparable

4

harm if an injunction does not issue; (4) that the threatened injury he faces outweighs the injury defendant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prod., Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993). Although in theory these elements are distinct, in the First Amendment context they essentially reduce to the question of whether plaintiff is likely to succeed on the merits. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Shondel v. McDermott*, 775 F.2d 859, 866-87 (7th Cir.1985). "This is because the loss of First Amendment freedoms is presumed to constitute irreparable harm, and irreparable injury establishes that there is no adequate remedy at law. Further, because governmental compliance with the First Amendment is deemed always to serve the common good, the public interest also turns on the merits." *Wil-Kar, Inc. v. Village of Germantown*, 153 F. Supp.2d 982, 987 (E.D. Wis. 2001).

A content-based law regulating the time, place, or manner of adult entertainment but aimed at the secondary effects of such entertainment[2] will be analyzed as if it were content-neutral. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). Such a regulation passes constitutional muster if it (1) is justified without reference to the content of the regulated speech; (2) is narrowly tailored to serve a significant governmental interest in curbing adverse secondary effects; and (3) still leaves open ample alternative channels for communication. *Schultz v. City of Cumberland*, 228 F.3d 831, 845 (7th Cir. 2000).

Plaintiff first argues that the code's definition of "adult bookstore" is overbroad–that is, not narrowly tailored to address the secondary effects of adult entertainment. He contends that the

---

[2] "[A]mong these secondary effects are (a) the potential increase in prostitution and other sex-related offenses, as well as other crimes and offenses, (b) the potential depreciation of property values in neighborhoods where these activities may occur, (c) health risks through the spread of sexually transmitted diseases, and (d) the potential for infiltration by organized crime for the purpose of unlawful conduct." § 6.34(1).

ordinance's definition of a "sexually-oriented adult establishment" is so broad that it includes establishments that sell expressive material, "such as photographs of women in bathing suits or a magazine showing the latest haute couture fashions with plunging necklines or an illustrated text showing how to conduct a self-administered breast exam or the proper manner of breast feeding or any number of generally popular R-rated movies." (Pl.'s Br. in Supp. at 17.) He also claims the ordinance contains no exemption for "serious artistic works that are distinguished by an emphasis on nudity or near-nudity." (*Id.*) Finally, plaintiff contends that it is not limited to commercial establishments.

Plaintiff faces a formidable hurdle in that the Seventh Circuit rejected an overbreadth challenge to a similar ordinance in *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988 (7th Cir. 2002). The Green Bay ordinance defines an "adult bookstore" as:

> An establishment having as a substantial or significant portion of its stock and trade [sic] in books, magazines, other periodicals, videotapes, compact disks, and/or other electronic media which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to "specified sexual activities" or "specified anatomical areas" as defined herein.

Green Bay Municipal Code § 13.56(2)(c)(1). The ordinance at issue in *Pleasureland* defined "adult bookstore" as:

> a commercial establishment which has a significant or substantial portion of its stock-in-trade or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising to the sale or rental of any [various media] which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas."

*Id.* at 993. The definitions of "specified sexual activities" or "specified anatomical areas" in the ordinance at issue in *Pleasureland* are also substantially similar to the definitions in the Green Bay code. The Green Bay ordinance defines "specified sexual activity" as:

6

1. Human genitals in a state of sexual stimulation or arousal;

2. Acts of human masturbation, sexual intercourse, or sodomy;

3. Fondling or other erotic touching of human genitals, pubic region, buttock, or female breasts.

§ 13.56(2)(a). "Specified anatomical areas" include:

1. Less than completely and opaquely covered:
    a. human genitals, pubic region;
    b. buttock;
    c. female breast below a point immediately above the top of the areola.

2. Human male genitals in a discernible turgid state, even if completely and opaquely covered.

§ 13.56(2)(b). The ordinance in *Pleasureland* contained several additional kinds of "specified sexual activity" and in defining "specified anatomical areas" the *Pleasureland* ordinance did not limit the portion of the breast that was required to be covered. In all other respects, the definitions were essentially the same.

In *Pleasureland*, the court rejected the plaintiffs' argument that the ordinance before it was overly broad because it could be applied to a store that sold any magazine or book that fell within the scope of the ordinance. In so ruling, the court noted that the ordinance applied only to establishments that derived a significant or substantial portion of their income from the sale of material that was characterized by its depiction or description of the specified sexual activity or anatomical areas:

> Plaintiffs argue that the definition of regulated Media would bring any magazine or book within the Ordinance's scope that mentions sexual activities or shows nudity and, thus according to the plaintiffs, the Ordinance is overbroad. In determining whether Section 125.02(A)(2) is overbroad, we look at its plain meaning. *See Schultz v. Cumberland*, 228 F.3d 831, 849 (7th Cir.2000). The Ordinance defines "Adult Bookstore," "Adult Novelty Store," and "Adult Video Store" as commercial

7

> establishments that, *inter alia*, "derive [ ] a significant or substantial portion or
> [their] revenues" from Media " characterized by the depiction or description of"
> nudity or sexual activities. *See* Section 125.02(A)(2) (emphasis added).
> "Characterized" means "to be a distinguishing characteristic of," and "characteristic"
> means "belonging to ⋯ essential nature of." *Webster's Third New Int'l Dictionary*
> 376 (1986) (emphases added). The Ordinance's plain language limits its application
> to Media of which nudity or sexual activities form the essential component. Thus,
> protected speech remains outside the scope of the definition, and we reject plaintiffs'
> facial overbreadth challenge.

*Pleasureland*, 288 F.3d at 996-97. Given the close similarity between the two ordinances, the same result would seem to follow here.

In arguing otherwise, plaintiff makes little effort to distinguish *Pleasureland* from the instant case. Instead, he contends that *Pleasureland* is contrary to recent Supreme Court precedents, such as *Ashcroft v. American Civil Liberties* Union, 535 U.S. 564 (2002), and suggests that the only way to "harmonize" them is by recognizing the plaintiff in *Pleasureland* "failed to provide a sufficient number of examples of expression that is sexually explicit yet not subject to secondary effects to persuade the court that the overbreadth was substantial." (Pl.'s Reply Br. at 7.) This court is not persuaded that the result would have been different had the plaintiff in *Pleasureland* supplied better hypotheticals to the Seventh Circuit.

Unlike most of the Supreme Court cases plaintiff cites in support of his argument, this is a zoning case. Presumably, all of the material plaintiff wishes to sell in his new store is constitutionally protected under current Supreme Court standards. The City's ordinance purports not to ban his sale of such material, but to regulate where he can operate his bookstore so as to minimize the harmful secondary effects to the surrounding community. Thus, it is the overall character of his business that is the object of the ordinance and not any one book, magazine or video that he wants to sell.

8

In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), the Court addressed an overbreadth challenge to a similar zoning ordinance that regulated the location of "adult" movie theaters. Noting that the challenged ordinance plainly applied to plaintiff's business, the Court rejected the argument that the theoretical possibility that it could be improperly applied to other businesses rendered it facially defective:

> We are not persuaded that the Detroit zoning ordinances will have a significant deterrent effect on the exhibition of films protected by the First Amendment. As already noted, the only vagueness in the ordinances relates to the amount of sexually explicit activity that may be portrayed before the material can be said to "characterized by an emphasis" on such matter. For most films the question will be readily answerable; to the extent that an area of doubt exists, we see no reason why the ordinances are not "readily subject to a narrowing construction by the state courts." Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance, and since the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction, we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court.

*Id.* at 60-61 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)); *see also Genusa v. City of Peoria*, 619 F.2d 1203, 1209-10 (7th Cir. 1980) (rejecting vagueness and overbreadth challenges to almost identical ordinance). Based on the foregoing authority, the court does not find plaintiff's claim that *Pleasureland* must be "harmonized" with Supreme Court precedents convincing.

Plaintiff's argument that Green Bay's ordinance is distinguishable because it omits the word "commercial" from § 13.56(2)(c)(1), and therefore brings educational institutions, museums, or libraries within the definition of "adult bookstore" is also unpersuasive, since the ordinance explicitly refers to the covered establishment as an "adult bookstore" and defines it in reference to its "stock and trade [sic]." § 13.56(2)(c)(1). Educational institutions, museums, and libraries are

9

not adult bookstores and do not have stock-in-trade. The omission of the word "commercial" from the definition of the kind of establishment to which the ordinance applies is therefore not fatal.

Plaintiff next argues that the conditional use standards set forth in § 13.61(5) are unconstitutionally vague and confer unbridled discretion on the City to grant or deny conditional use permits. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988) ("[A] licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a[n unconstitutional] prior restraint.") Plaintiff also argues that § 13.61(3) fails to guarantee that a decision on whether to grant a conditional use permit will be made within a reasonable time. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 226 (1990) ("[A] prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible."). Assuming plaintiff is correct on both points, the court would enjoin application of § 13.61, which is severable from the remainder of the code. *See* § 40.01(3) ("Should any section, paragraph, sentence, clause or phrase of theses ordinances be declared unconstitutional or invalid for any reason, the to the extent of meaningful severability,[3] the remainder of such ordinance or

---

[3]A severability clause operates to save the constitutional portions of a statutory scheme except where the unconstitutional portions are "an integral part of the statutory enactment viewed in its entirety." *Zbaraz v. Hartigan*, 763 F.2d 1532, 1545 (7th Cir. 1985). § 13.56(3)(a) reads as follows:

> So as to ensure a maximum benefit to the community and a minimum impact upon existing and future uses of land, it is hereby directed that, subject to the standards set forth in the ordinance, sexually-oriented adult- entertainment establishments (hereinafter adult establishments) shall locate only in areas zoned Neighborhood Business, Community Center Business, First Business, Highway Business, Second Business, and Industrial A, and then only *as a conditional use. Such application for conditional use may only be granted* if the following requirements are met: (a) No more than one adult establishment shall be located on any one parcel, and such adult establishment shall be at least 1,500 feet from any other adult establishment. Further, no adult establishment shall be permitted within 1,000 feet of the following . . .

Excising the italicized portion leaves a meaningful statute that functions without § 13.61.

10

ordinances shall not be affected."). Such an injunction would not, however, free plaintiff from the distance provisions of § 13.56(3)(a), which are by no means vague or open to discretionary interpretation. It is § 13.56(3)(a) that precludes plaintiff from relocating his bookstore to the desired location. Thus, even a favorable decision on the constitutionality of § 13.61 would not redress the injury of which plaintiff complains. Plaintiff accordingly lacks standing to challenge that provision. *See Young v. American Mini Theatres*, 427 U.S. at 58-59; *Tobin for Gov. v. Ill. Bd. of Elections*, 268 F.3d 517, 527 (7th Cir. 2002).

## CONCLUSION

In sum, plaintiff has not shown that he has a substantial likelihood of success on the merits at trial. Accordingly, his motion for a preliminary injunction will be **DENIED**.

**SO ORDERED.**

Dated this   12th   day of September, 2005.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge